# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN WAYNE PUMPER, | ) | CASE NO. 1:09-CR-317 |
| | ) | 1:16-CV-557 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the motion of petitioner Steven Pumper ("petitioner" or "Pumper") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 30 ["Mot."].) Respondent United States of America ("respondent" or "government") opposes the motion (Doc. No. 32 ["Opp'n"]), and petitioner has filed a reply. (Doc. No. 33 ["Reply"].) For all of the foregoing reasons, petitioner's motion is denied as time-barred.

## I. BACKGROUND

In 2007, the Federal Bureau of Investigation launched a large-scale, multi-year probe into potential public corruption in Cuyahoga County, Ohio. The focus of the investigation was allegations that one of the county's three commissioners, James Dimora, along with the county auditor, Frank Russo, had orchestrated a conspiracy whereby the two men would benefit themselves, their co-conspirator's and their designees, by using the power and authority of their public offices to elicit monetary and in-kind bribes in exchange for public contracts and employment with the County.

Pumper, a local contractor whose company received county building contracts, was one of the first individuals approached by the FBI, and one of the first to agree to cooperate with authorities. As part of his cooperation, petitioner participated in several proffer sessions with attorneys from the Office of the United States Attorney for the Northern District of Ohio. These sessions were governed by a proffer agreement, dated October 10, 2008, which provided, in pertinent part:

> [N]o statements made or other information provided by [Pumper] during the proffer will be used directly against him in any criminal trial, unless it involves the commission of a crime of violence or a prosecution for perjury, making false statements or obstruction of justice. [Also], the government may make derivative use of any statement or information, and may pursue any investigation leads suggested by any statement or information, provided by [Pumper]. This provision is necessary in order to eliminate the necessity for a *Kastigar* hearing at which the government would have to prove that the evidence it would introduce at trial is not tainted by any statements made by or other information provided by [Pumper] during the proffer.

(Doc. No. 30-9 (Proffer Letter) at 442.[1]) Despite the fact that he signed the agreement, petitioner claims to "have no idea of [the] contents." (Mot. at 396.)

On July 17, 2009, pursuant to the terms of a plea agreement, petitioner entered a plea of guilty to Counts 1-9 of an Information charging petitioner with conspiracy to commit bribery and bribery concerning programs receiving federal funds, conspiracy to obstruct and obstruction of justice, making materially false statements to law enforcement, structuring, and mail fraud and honest services mail fraud. (Doc. No. 1 (Information); Doc. No. 8 (Plea Agreement); Doc. No. 5 (Minutes of Guilty Plea Hearing).) The plea agreement contained an express provision waiving the right to bring a direct appeal or to initiate post-conviction proceedings, "including a

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

proceeding under 28 U.S.C. § 2255." (Plea Agreement at 55.) Pumper further agreed "not to oppose any request of the United States that his sentencing be postponed until [Pumper's] cooperation is completed. [Pumper] knowingly waives any rights he may have under the Speedy Trial Act, 18 U.S.C. § 3161." (*Id.* at 63.) The government, in turn, agreed to entertain any request by petitioner to schedule his sentencing hearing prior to completing his cooperation. (*Id.*)

At the parties' request, the Court agreed to defer sentencing until Pumper had competed his cooperation. (Minutes of Guilty Plea Hearing at 42.) On January 21, 2011, the matter was reassigned to the undersigned, and petitioner's sentencing was set for June 25, 2012. (Doc. No. 15 (Notice of Sentencing Hearing).) At the government's request, the date was continued to permit petitioner to continue to provide assistance to the government and to allow him to testify at the trials of certain co-conspirators. On December 4, 2013, petitioner was sentenced to a term of 97 months of imprisonment, which represented a low-end guideline sentence that was in accordance with the plea agreement, including the recommended 3-level downward departure for his cooperation. (Doc. No. 23 (Judgment).)

Petitioner did not take a direct appeal, but on March 8, 2016, he filed the present motion under 28 U.S.C. § 2255 to vacate his sentence. The primary contention in his petition is his belief that information he provided in his proffer was impermissibly used to charge him. He also claims that he was deprived of his right to a speedy trial by virtue of the delay in sentencing, and deprived the effective assistance of counsel, purportedly resulting from his counsel's representation that petitioner had waived his right to an appeal. Petitioner also maintains that the Court erred in enhancing his sentence. He requests an evidentiary hearing.

## II. PETITIONER'S MOTION TO VACATE UNDER § 2255

### A. Standard of Review

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

A criminal defendant may not utilize a § 2255 motion as a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for direct appeal."); *see Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). To assert a claim not raised on direct appeal, a petitioner ordinarily must show cause for the default and prejudice. *See Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1064, 140 L. Ed. 2d 828 (1998); *United States v. Frady*, 456 U.S. 1584, 1603-04, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1998).

A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Abrahamson*, 507 U.S. at 637). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect

which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

When a defendant challenges the validity of a plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* Subsequently-presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id.* (citations omitted).

A court should hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Thus, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255.")

(citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962)); *cf. Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (finding that the burden is met where the petitioner "offers more than a mere assertion . . . he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'"). Where (as here) the judge considering the § 2255 motion also presided over the sentencing hearing, the judge may rely on his or her recollections of those proceedings. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citation omitted).

The Court finds that an evidentiary hearing is not warranted in the present case. The undisputed facts in the record demonstrate that petitioner's motion—filed more than two years after his sentence became final—is time-barred under the governing statute, and petitioner has not come forward with any facts that would demonstrate that he is entitled to equitable tolling.

### B. Timeliness under § 2255(f)(1)

The Anti-Terrorism and Effective Death Penalty Act (ADEPA) "provides a one-year statute of limitations for filing a federal habeas petition." *Cleveland v. Bradshaw*, 693 F.3d 626, 631 (6th Cir. 2012). Specifically, a prisoner must file his § 2255 motion within one year of the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, the judgment of conviction was entered on December 4, 2013. Because petitioner did not appeal his conviction or sentence, the one-year statute of limitations period began to run 14 days later. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004). Fed. R. App. P. 4(b)(1).[2] Petitioner was required to file his § 2255 motion by December 18, 2014. Instead, he filed the instant motion more than 27 months after the limitations period expired. Accordingly, the motion is not timely under § 2255(f)(1).

### C.     Timeliness under § 2255(f)(2)

Petitioner claims that his motion is timely under § 2255(f)(2) because he had previously been suffering under a governmental impediment. Again, that provision allows for the one year period to begin to run from "the date on which the impediment to making a motion created by governmental action . . . is removed, *if the movant was prevented from making a motion by such governmental action*[.]" § 2255(f)(2) (emphasis added).

According to petitioner, the government and his trial attorney withheld his criminal file "containing key evidence needed to substantiate his claims." (Reply at 457.) He explains that, due to the ongoing criminal prosecutions against his co-conspirators, he was not given access to his case file. "After not being able to retain his criminal file from [trial] counsel, [petitioner] on March 13, 2015 submitted a Freedom of Information request for his file." (*Id*.) He cites an April 23, 2015 letter denying his FOIA request, though he does not attach the request or the letter, or even identify any of the earlier dates in which he attempted to acquire his case file from his

---

[2] Prior to the 2009 amendment, Rule 4(b)(1) provided for a 10-day period for appealing a judgment in a criminal case.

7

counsel.³

Even if he had, petitioner does not state how or when the government allegedly impeded his efforts. Rather, the only evidence petitioner points to—the March 13, 2015 FOIA request—was filed after the expiration of the one-year period in which he could have filed a timely § 2255. The record does not, therefore, support his position that the government served as an impediment to filing a timely motion. *See, e.g., Smith v. United States*, No. 1:06-CV-061, 2009 WL 485033 (N.D. Ohio Feb. 26, 2009) (petitioner could not demonstrate a government impediment where he did not allege that the government precluded him during the statutory one-year period from obtaining trial transcripts).

More to the point, petitioner has not demonstrated that any government action *prevented him from filing his motion*. While Pumper claims that the government unnecessarily delayed him in recovering his case file, he has not identified *anything* in his file that he did not already have that he needed before he could bring the present motion. Indeed, all of the facts presented in petitioner's motion were known to him in December 2013.

In "Issue One", petitioner claims that the government violated his Fifth Amendment rights when the government used information obtained during the proffer sessions to prepare the information against him. Petitioner makes a similar claim in "Issue Six." Yet, petitioner knew in 2009 that certain proffer-protected information had been included in the plea agreement because he expressly consented to its inclusion in the plea agreement; and because he read it in the factual basis of his plea agreement prior to signing the agreement and initialing each page. (*See*

---

³ In support of his motion, petitioner appended a hand-typed timeline setting for the "Dates of Communications and partial records on hand." (Doc. No. 30-2.) Notwithstanding the considerable detail contained in this timeline, it does not identify a single date petitioner contacted his attorney or the government between his sentencing and the time he alleges that he made a FOIA request.

Plea Agreement at 68-93.)

In "Issue Two," petitioner alleges that his Sixth Amendment right to counsel was denied when his attorneys were absent during certain proffer sessions. Of course, petitioner obviously knew in December 2013 that his attorneys did not participate in every session between 2008 and 2013 because petitioner was present at each of these debriefing sessions.

In "Issue Four," petitioner claims that his constitutional right to a speedy trial was denied when his sentencing hearing was delayed, but he knew the exact duration of the delay because he was present at both the arraignment and sentencing, and he signed the plea agreement that permitted the government to seek a delay in sentencing.

"Issue Three" addresses petitioner's claim that the Court unlawfully enhanced his sentence by considering facts not determined at trial. Yet, petitioner was present at the sentencing, and the facts that supported the Court's guideline calculation were set forth in the plea agreement he signed.

Finally, "Issue Five" claims ineffective assistance of counsel based on his counsel's representation that petitioner had waived his right to appeal. Again, he was aware of the conversations he had with his own counsel after sentencing and did not need to recover his file to discover these facts.[4] *See Webb v. United States*, -- F. App'x. --, 2017 WL 655774, at *2 (6th Cir.

---

[4] Specifically, petitioner claims that "[o]n the day of sentencing [he] advised his attorney that he desired to file a direct appeal." (Mot. at 407.) He claims that "[t]he petitioner knew, but did not disclose to his defense counsel that he was most unhappy with the criminal proceedings and counsel's performance and was clearly determined to seek an appeal of those issues, including, inter alia, the plea agreement and restitution judgment." (*Id*.) While counsel is ineffective if he fails to file a notice of appeal after his client requests that he do so, even if the client has waived most of his appellate rights, *see Campbell v. United States*, 686 F.3d 353, 356 (6th Cir. 2012), petitioner was aware as early as December 2013 that his attorney failed to follow through with this alleged request. Because he offers no excuse for his delay in raising this issue, he is not entitled to an evidentiary hearing. Moreover, his claim now that he was unhappy with his counsel's representation and the plea agreement stands in stark contrast to his representations at the change of plea hearing that he was satisfied with the plea deal and his counsel's representation. (Doc. No. 39 (Change of Plea Hearing Transcript) at 532, 553.)

Feb. 17, 2017) (defendant could not establish that he was under a government impediment under § 2255(f)(2) where the facts surrounding the advice he received from counsel at the plea stage were "indisputably" known by defendant at the time his conviction was final).

In his reply, petitioner claims that he issued the FOIA request to "examine the Government's use of Proffer protected information against other Co-Defendants in this matter to ascertain whether a sentence reduction would be forthcoming, and to get a better understanding of his rights forfeited and obtained during his criminal prosecution." (Reply at 457.) This information would not have been necessary (or even relevant) to any of his claimed assignments of error. Moreover, at the time of sentencing, petitioner did receive the full extent of the parties' contemplated downward departure for cooperation. In the end, petitioner has failed to demonstrate that he was under a government-imposed impediment that precluded him from filing his motion. Therefore, he cannot rely on § 2255(f)(2) to render his motion timely.

### D. Timeliness under § 2255(f)(4)

The same logic compels a finding that petitioner may not rely on § 2255(f)(4), which permits the filing of a motion to vacate within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Again, petitioner has not pointed to any recently discovered facts that were necessary to the filing of his motion. *See Webb*, 2017 WL 655774, at *4 (motion to vacate was not timely under § 2255(b)(4) where the only newly discovered facts were "extraneous or irrelevant to the pertinent facts supporting his" claim).

Nonetheless, petitioner claims that, applying § 2255(f)(4), "the Court should conclude that [his] one-year statute of limitations began to start running on or about March 13, 2015, when

[he], with the help of a Jailhouse Lawyer, recognized that the Government and his Trial Attorney had engaged in misconduct in obtaining his conviction and the formulation of his sentence." (Reply at 458.) But the Sixth Circuit has made clear that § 2255(f)(4) addresses the discovery of new facts, not the recognition of their legal importance. *Phillips v. United States*, 734 F.3d 573, 580 (6th Cir. 2013) (Section 2255(f)(4) is "directed at the discovery of new facts, not newly discovered law"); *see, e.g., Alexander v. United States*, Criminal Case No. 11-20180, 2016 WL 6158961, at *6 (E.D. Mich. Oct. 24, 2016) (applying *Phillips* and observing that "Petitioner appears to be conflating his ability to discover the facts underlying his ineffective state counsel claim, with his ability to recognize the legal significance of such facts"); *Woodley v. United States*, Criminal Case No. 04-80335, 2016 WL 4701464, at *4 (E.D. Mich. Sept. 8, 2016) ("delayed realization of the precise manner in which the sentencing court allegedly misapplied the Sentencing Guidelines in determining his sentence does not qualify as a discovery of new 'facts' that would warrant a renewed one-year period under § 2255(f)(4)").

As for his claim that he did uncover new facts, petitioner suggests that it was not until "February of 2016, after numerous formal requests to Trial Counsel and the Government, [he] received and reviewed his 2008 Proffer agreement for the first time." (Reply at 458.) Petitioner was a party to the proffer agreement, and having affixed his signature to it indicating that he approved it, he is charged with knowing the terms of that agreement. (Proffer Agreement at 443.) In much the same way he is charged with knowing what took place in the proffer sessions and his own sentencing hearing, petitioner knew or should have known the details of the proffer agreement he signed. *See Woodley*, 2016 WL 4701464, at *5 (petitioner "was present at his . . . sentencing hearing, and therefore is properly charged with notice of what transpired at this

11

proceeding") (quoting *Hall v. Warden*, 662 F.3d 745, 751 (6th Cir. 2011) (inmate "clearly knew what took place at his trial and what his grounds for relief were"); *United States v. Pollard*, 416 F.3d 48, 54 (D.D.C. 2005) ("'[i]t could not have escaped [the defendant's] notice during the sentencing proceedings, at which he was present,' that his counsel had pursued a course of action that the defendant sought to challenge in a § 2255 motion filed outside the ordinary one-year limitation period")). Accordingly, petitioner is not entitled to the benefit of § 2255(f)(4).

### E. Timeliness under § 2255(f)((3)

Petitioner also seeks to invoke § 2255(f)(3), which permits the filing of a motion to vacate within one year a "right asserted was initially recognized by the Supreme Court[.]" Presumably referencing "Issue Four," petitioner highlights the fact that the Supreme Court accepted certiorari review in *Betterman v. Montana*, "to address whether the Speedy Trial Clause applies to sentencing hearings or whether the Due Process Clause . . . [is] the Constitutional provision[] that constrain[s] dilatory sentencing proceedings." (Reply at 458.) The Supreme Court subsequently ruled, however, that the Speedy Trial Clause "does not apply to delayed sentencing[.]" *Betterman v. Montana*, -- U.S. --, 136 S. Ct. 1609, 1613, 194 L. Ed. 2d 723 (2016). Because the Supreme Court did not recognize a new right, petitioner cannot take advantage of § 2255(f)(3) to rescue his untimely motion.

### F. Doctrine of Equitable Tolling

Finally, petitioner claims that he is entitled to equitable tolling, which "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quotation marks and citation omitted). Petitioner is entitled to

equitable tolling of the limitations period for filing a § 2255 motion "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (quotation marks and citation omitted); *Ata v. Scott*, 662 F.3d 736, 741 (6th Cir. 2011) (quotation marks and citation omitted). Petitioner bears the burden of demonstrating that he is entitled to equitable tolling. *See McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003) (citing *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

As set forth above, petitioner has not established that he diligently pursued his rights. He has failed to offer any competent evidence that would substantiate his claims that he made repeated attempts to obtain necessary information that he lacked from the government and his trial counsel but his efforts were thwarted. Further, he suggests that he delayed until after the last defendant charged in the underlying public corruption investigation was tried before he filed his § 2255 motion because he was waiting for an "indication from the Government that it would honor its promise to credit the Defendant for his Proffer Information[.]" (Reply at 457.) However, the record does not support a finding that petitioner was to receive any additional credit for his cooperation. While the plea agreement provided for a penalty if petitioner failed to cooperate, there was nothing in the agreement, or presented at sentencing, that supported Pumper's belief that more consideration beyond the substantial assistance credit he concedes he received at sentence would be forthcoming. Therefore, it was not reasonable for petitioner to delay in filing his § 2255 motion.

With respect to the second prong of the test, petitioner offers two reasons why circumstances beyond his control were responsible for the delay. First, he posits that he received

misinformation from his counsel that he had waived his appellate rights. The Sixth Circuit has recognized that "attorney incompetence may be a basis for equitable tolling[.]" *Robertson*, 624 F.3d at 785 (citation omitted). Here, petitioner claims that, at some undefined point after sentencing, he asked his counsel about the possibility of filing an appeal. According to Pumper, his counsel informed him that he had waived his appellate rights. (Reply at 457; Pumper Decl. ¶ 6.) Yet, there is nothing inaccurate about this information. The plea agreement specifically provided that, with limited exceptions, petitioner waived the right to file a direct appeal or a post-conviction motion attacking his sentence. Moreover, Pumper's own evidence confirms that he and his counsel discussed the fact that a limited appellate right survived his plea.[5] Because such an appeal would involve counsel's own conduct, Pumper's attorney recommended that he contact a post-conviction attorney to pursue the matter. (Doc. No. 30-7 (Counsel Letter) at 437.) Petitioner concedes that he did reach out to other attorneys, but was told by two of three lawyers he contacted that any § 2255 motion would be untimely. (Reply at 460.)[6] Because there is no evidence that his trial counsel's advice was in error, let alone amounted to more than "a garden variety claim of excusable neglect[,]" it cannot establish an extraordinary circumstance warranting tolling. *See Robertson*, 624 F.3d at 784 (quoting *Irwin v. Dep't of Veterans Affairs*,

---

[5] In a letter dated July 28, 2015, counsel responded to petitioner's inquiry whether his sentence was illegal. Counsel noted, "We would like to help you consider this. However, your Plea Agreement provides that you waive any right to appeal or other post-conviction relief except for claims based on 'ineffective assistance of counsel or prosecutorial misconduct.' Plea Agreement, ¶14, p. 7. We cannot objectively evaluate an ineffective assistance contention, since it would necessarily be based on our own conduct. At best, our advice would be self-serving; at worst, any response we provide could be viewed as misleading you about the potential viability of such a claim." (Doc. No. 30-7 (Counsel Letter) at 437.)

[6] The third attorney told him that his position had merit, but there is no indication that he hired new counsel, or asked the attorney to file a post-conviction motion on his behalf. (*Id.*)

498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)).

Petitioner also appears to rely on a claim that he was under the influence of medication at the time of sentencing. Because he was distressed immediately before sentencing, petitioner states that he doubled the dose of certain medication that had been prescribed by his doctor. (Reply at 460.) Notwithstanding the fact that he offered lengthy and coherent allocution on his own behalf at sentencing, he claims that the sentencing hearing was a "blur." (*Id.*; Doc. No. 30-8 (Declaration of Steven Pumper ["Pumper Decl."]) ¶ 5.) Once he arrived at his penal institution and got settled, he claims that he met with the medical staff and his medication levels were adjusted downward. According to petitioner, this adjustment, along with regular exercise, made it possible for him "to start retaining information and look back to what had occurred since the day [he] was [first] approached [by the FBI]." (Reply at 460.)

To the extent that petitioner is now asserting that his purported decision to over-medicate interfered with his ability to seek post-conviction relief, he is not entitled to equitable tolling. It is true that the Sixth Circuit has held that "mental incompetence or incapacity may provide a basis for equitable tolling." *Ata*, 662 F.3d at 741 (citation omitted). To be entitled to equitable tolling under this exception, however, a petitioner would have to show that (1) he is mentally incompetent, and (2) his mental incompetence caused his failure to comply with the relevant statute of limitations. *Id.* at 742. A petitioner satisfies this test only when he offers competent evidence demonstrating that he was unable rationally or factually to understand the need to timely file, or that his mental state rendered him personally unable to prepare his post-conviction petition. *See Stiltner v. Hart*, 657 F. App'x 513, 521 (6th Cir. 2016) (adopting the test announced in *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010)). Petitioner's unsubstantiated and self-serving

15

statements do not even begin to demonstrate that his alleged decision to over-medicate rendered him legally incompetent or incapacitated.

In fact, the record before the Court stands opposed to petitioner's claims. At his change of plea hearing, petitioner represented that he was not taking any medication for anxiety or depression. (Doc. No. (Change of Plea Hearing Transcript) at 530.) Petitioner also represented that he had reviewed and discussed at length the terms of the plea agreement with counsel prior to the change of plea hearing, that he understood the terms of the agreement, and that he was prepared to be bound by it. (*Id*. at 553.) These representations, alone, stand as a formidable barrier to petitioner's subsequent claims that he did not appreciate the terms of his plea agreement or the nature of the rights he was foregoing by pleading guilty. *See Blackledge*, 431 U.S. at 74. Additionally, as to the sentencing hearing, the Court had the opportunity to observe petitioner and, while the presentence report indicated that he was taking medication for situational depression and anxiety (which is not unusual for a defendant facing a substantial loss of liberty), the Court did not observe that the medication interfered with his ability to understand what was transpiring: he was poised throughout the proceedings, and his allocution was articulate, thoughtful, and entirely appropriate. (*See* Doc. No. 37 (Sentencing Transcript) at 501-02; Doc. No. 18 ¶¶ 161, 162.) There was nothing about petitioner's demeanor, appearance, or comments at sentencing that suggested to the undersigned that he was under the influence of any drug or medication that was interfering with his ability to understand the proceedings.

Nor has petitioner come forward with any competent evidence that he was rendered unable to appreciate the need to timely file his § 2255 motion. Indeed, his subsequent communications with various attorneys actually show that he appreciated the need to timely

pursue any existing appellate rights. He has not, therefore, established that he suffered from a mental impairment that was sufficiently severe to qualify as an "extraordinary circumstance" during the relevant limitations period, and he is not entitled to equitable tolling.

### III. CONCLUSION

For all of the foregoing reasons, petitioner's untimely motion to vacate, set aside, or correct his sentence (Doc. No. 30) is denied and this case is dismissed. Further, the Court certifies, pursuant to 28 U.S.C. § 2255(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: June 21, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**